Carreau v. SSA                               CV-00-294-B    05/31/01

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Dennis Carreau**

  **v.**                                    **Civil No. 00-294-B**

**William A. Halter, Acting**
**Commissioner, Social Security**
**Administration**


**MEMORANDUM AND ORDER**

Dennis Carreau applied for Title II Social Security Disability Insurance Benefits on May 1, 1996. Carreau alleged an inability to work since October 20, 1993, due to herniated discs in his lower back and knee pain. The Social Security Administration ("SSA") denied his application initially and on reconsideration. Administrative Law Judge ("ALJ") Robert Klingebiel held a hearing on Carreau's claim on January 23, 1997, and subsequently issued a decision in which he concluded that Carreau was not disabled. The Appeals Council denied Carreau's request for review, and he appealed the ALJ's decision to this court. On September 30, 1999, Judge McAuliffe issued an Order reversing the Commissioner's decision and remanding the case for further proceedings. The Appeals Council vacated the ALJ's

initial decision and remanded the case to him. On March 23, 2000, the ALJ held another hearing and, on May 15, 2000, he issued a decision in which he concluded that Carreau was not disabled. Because the Appeals Council did not assume jurisdiction over the case, the ALJ's decision is the final decision of the Commissioner of the SSA. 20 C.F.R. §§ 404.984(a) (2000) ("when a case is remanded by a Federal court for further consideration, the decision of the [ALJ] will become the final decision of the Commissioner after remand . . . unless the Appeals Council assumes jurisdiction of the case"), 416.1484(a) (2000) (same).

Carreau brings this action seeking review of the Commissioner's denial of his application for benefits. See 42 U.S.C. § 405(g) (2000). Before me are Carreau's Motion for Order Reversing the Decision of the Commissioner, (Doc. No. 7), and the Commissioner's Motion for Order Affirming the Decision of the Commissioner, (Doc. No. 9). For the reasons set forth below, I conclude that the ALJ's decision that Carreau was not entitled to benefits was not supported by substantial evidence. Therefore, I reverse the Commissioner's decision and remand the case for the purpose of calculating and awarding benefits.

# I. **BACKGROUND**[1]

Carreau was forty-seven years old when he filed his application for benefits. Although his formal education ended when he completed the eighth grade, he earned a high school equivalency certificate while serving in the Navy. From 1970 to 1993, Carreau worked as a commercial glazier.

In May 1993, Carreau injured his back while lifting a heavy plate of glass at work. His injury kept him out of work for a few weeks, after which he returned to work on light duty. Carreau stopped working entirely on October 20, 1993, due to pain in his back and left knee.

On October 5, 1993, Carreau met with Dr. Charles K. Detweiler to discuss his back and knee pain. Carreau was unable to fully extend his left knee or squat on that knee due to pain. Subsequent CT scans of Carreau's lumbar spine revealed a small far left lateral herniated disc at L3-4 that could displace the descending L2 nerve root and a mild central and right-sided small herniated disc at L4-5 that could give rise to an L5

_____

[1] Unless otherwise noted, the procedural and factual background set forth in this Memorandum and Order derives from the joint statement of material facts submitted by the parties.

radiculopathy on the right.

After being examined by Drs. Jacobs and Wepsic in November and December, 1993, Carreau returned to Dr. Detweiler in January 1994. An MRI suggested that Carreau might have a torn anterior cruciate ligament ("ACL") in his left knee. Dr. Detweiler performed surgery on this knee on February 11, 1994. Although he found the ACL to be intact, Dr. Detweiler repaired a tear in the medial meniscus. Dr. Detweiler found no other abnormalities.

Despite the surgery, Carreau's pain continued. After further consultation with a number of physicians, Dr. Theodore R. Jacobs performed an arthroscopic discectomy on Carreau's L3-4 disc on June 26, 1995. Dr. Jacobs removed a significant portion of the herniated disc. Although the surgery itself went well, Carreau continued to complain of back and knee pain. On August 30, 1995, Dr. Jacobs noted that Carreau's condition had not improved.

Dr. Jacobs scheduled further surgery to be performed in January, 1996. However, when a pre-operative MRI showed significant improvement in the operative site, Dr. Jacobs canceled the scheduled procedure. Dr. Jacobs recommended that Carreau undergo a rheumatological evaluation.

Carreau filed an application for Title II Social Security benefits on May 1, 1996. On January 14, 1997, Dr. William J. Kilgus examined Carreau, "primarily for an opinion regarding Social Security Disability." Dr. Kilgus opined that "[b]ased on his age, training and background, and given the fact that it is unlikely that he will improve to any significant degree in the future, he is unable to engage in any substantial gainful employment on a permanent basis."

In April 1997, Dr. George Neal performed a consultative neurological evaluation of Carreau and prepared a medical assessment of his ability to perform physical work-related activities. Based on Carreau's history, complaints, and reports of pain, Dr. Neal opined that Carreau could: (1) not do frequent lifting and could lift only five to ten pounds occasionally; (2) sit for only fifteen minutes at a time and a total of two to four hours per day; and (3) stand for one hour at a time and a total of four to six hours per day.

In May 1997, Angel R. Martinez, Ph.D., a clinical psychologist, conducted a psychological evaluation of Carreau and prepared an assessment of his mental ability to perform work-related activities. He opined that Carreau possessed average to

high average intellectual ability, but scored only in the low average to average range on a full scale IQ test. Test results showed that Carreau spelled at a third-grade level, read at a sixth-grade level, and performed arithmetic at a seventh-grade level. These results, compared with those on the intelligence test, led Dr. Martinez to suspect that Carreau has a learning disability.

Dr. Martinez concluded that Carreau has a good ability to follow work rules, relate to co-workers, deal with the public, and maintain attention and concentration. He further opined that Carreau had a good ability to: (1) understand, remember and carry out simple, detailed, or complex job instructions; and (2) make certain personal and social adjustments. Dr. Martinez concluded, however, that Carreau had only a "fair" ability to use judgment, interact with supervisors, deal with work stress, and function independently. A rating of "fair" means that Carreau's "[a]bility to function in this area is seriously limited, but not precluded." Tr. at 244.[2]

The SSA denied Carreau's application for disability benefits

---

[2] "Tr." refers to the certified transcript of the record submitted to the Court by the SSA in connection with this case.

on June 19, 1996, and on reconsideration. ALJ Klingebiel held a hearing on Carreau's application on January 23, 1997. The ALJ denied Carreau's application for benefits on August 22, 1997. See Carreau v. Apfel, No. 98-274-M, 1999 WL 814275, *4 (D.N.H. Sept. 30, 1999) (discussing the ALJ's findings). The Appeals Council denied Carreau's request for review, and he appealed to this court.

## A.  The Remand Order

On September 30, 1999, Judge McAuliffe issued an Order granting Carreau's motion to reverse the Commissioner's decision and remanding the case for further proceedings. Carreau, 1999 WL 814275, *8. Judge McAuliffe found that the ALJ failed to consider evidence in the record which suggested that Carreau had certain nonexertional impairments which might significantly limit his occupational base. Given the ALJ's failure to consider the impact of this evidence, Judge McAuliffe held that the ALJ's finding of "not disabled" was not supported by substantial evidence. Id. at *5.

Judge McAuliffe instructed the ALJ, on remand, to consider whether Carreau's nonexertional limitations narrowed the range of jobs that he could perform. Specifically, he instructed the ALJ

to consider the impact of the following limitations, previously unaddressed by the ALJ, on the range of work that Carreau could perform: (1) Carreau's limited ability to deal with work stresses and function independently, as found by Dr. Martinez, id. at \*6; (2) Carreau's limited ability to climb and sit, id. at \*4 n.5; and (3) Carreau's need to pace himself while performing household chores, id. at \*7-8.

## B.    **The Decision on Remand**

On remand, the Appeals Council vacated the ALJ's prior decision and remanded the case to the ALJ for further proceedings consistent with Judge McAuliffe's Order.

On March 23, 2000, the ALJ held a new hearing at which Carreau, Carreau's wife, and a vocational expert testified. The ALJ issued a decision on May 15, 2000, that contained certain findings, including the following:

> (1) Carreau has the residual functional capacity ("RFC")[3] "to perform the physical exertion and nonexertional requirements of work except for lifting 20 pounds occasionally with no frequent lifting above shoulder level or bending. He needs to change positions often and take breaks to stretch and move around . . .;"

---

[3] RFC "is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, \*2.

(2) Carreau "is unable to perform his past relevant work as glaz[i]er."

(3) Carreau's RFC for light work[4] "is reduced by the need to avoid any lifting above shoulder level, the need to change positions often and take breaks to stretch and move around and by his low literacy skills."

(4) "Based on an exertional capacity for light work, and [Carreau's] age, education, and work experience, section 404.1569 and Rules 202.18 and 202.11, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of 'not disabled.'"

(5) Carreau's "capacity for light work has not been compromised by his nonexertional limitations. Accordingly, using the above cited rule as a framework for decisionmaking, in combination with Vocational Expert testimony identifying a significant number of jobs [Carreau] can perform given his vocational factors [,] including work as a fast food worker or as a cashier, [Carreau] is not disabled."

Tr. at 258-59.

Because the Appeals Council did not assume jurisdiction of this case, the ALJ's decision is the final decision of the

_____

[4] Light work may involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," "a good deal of walking or standing," and/or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2000). "If someone can do light work, . . . [he ordinarily] can also do sedentary work." Id. Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;" occasional "walking and standing;" and frequent "sitting." 20 C.F.R. § 404.1567(a).

Commissioner.  20 C.F.R. §§ 404.984(a), 416.1484(a).


## II.  STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits, and upon a timely request by the claimant, I am authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the ALJ's decision.  42 U.S.C. § 405(g).  My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial evidence.  Id.; see Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.  See Irlanda Ortiz, 955 F.2d at 769.  Therefore, I must "'uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion.'"  Id. (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  I apply these standards in reviewing Carreau's case on appeal.

# III. __DISCUSSION__

When evaluating whether a claimant is "disabled," and therefore eligible for Title II disability benefits, an ALJ's analysis is governed by a five-step sequential evaluation process.[5] <u>See</u> 20 C.F.R. § 404.1520 (2000). The parties do not dispute that Carreau carried his burden, at step four of the sequential evaluation process, of showing that he is incapable of returning to his prior employment. <u>See</u> <u>Santiago v. Sec'y of Health & Human Servs.</u>, 944 F.2d 1, 5 (1st Cir. 1991) (per curiam); 20 C.F.R. § 404.1520(e). The parties disagree, however, as to whether the Commissioner carried his burden, at step five, of coming forward with evidence of specific jobs in the national economy that Carreau is capable of performing. <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 276 (1st Cir. 1988) (per curiam); <u>Arocho v. Sec'y of Health & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982); 20 C.F.R. § 404.1520(f).

---

[5] The Social Security Act defines "disability" for the purposes of Title II as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000).

Carreau argues that the Commissioner did not satisfy his burden because the ALJ's final decision did not take into account Dr. Rodriguez's finding that Carreau has a seriously limited ability to deal with work-related stress. Because I agree with this argument, I need not address Carreau's additional argument that the ALJ failed to properly weigh Carreau's complaints of pain.

A.   **Carreau's Ability to Deal With Stress**

Carreau contends that the ALJ ignored evidence in the record indicating that Carreau has a seriously limited ability to deal with work-related stress and that this limitation, when coupled with his other limitations, precludes Carreau from being able to work.

To determine whether a claimant is disabled, an ALJ must consider and evaluate all relevant evidence in the record. 20 C.F.R. §§ 404.1520(a), 404.1527(c); see Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981); see also 20 C.F.R. § 404.1512(b) (2000) (defining "evidence"). If any of the evidence in the record is inconsistent, the ALJ must weigh the conflicting evidence and decide which evidence to credit. See 20 C.F.R. § 404.1527(c)(2).

-12-

Of course, the ALJ is not free to simply ignore relevant evidence in the record, especially when that evidence supports a claimant's cause. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1, 1 (1st Cir. 1984) (per curiam); Diaz v. Sec'y of Health & Human Servs., 791 F. Supp. 905, 912 (D.P.R. 1992) ("While the ALJ is free to make a finding which gives less credence to certain evidence, he cannot simply ignore . . . the 'body of evidence opposed to . . . [his] view.'" (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). For a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence, that decision "'must take into account whatever in the record fairly detracts from its weight.'" Diaz, 791 F. Supp. at 912 (quoting Universal Camera, 340 U.S. at 488); see Cotter, 642 F.2d at 707 (holding that an ALJ's decision must explain why probative evidence has been rejected "so that a reviewing court can determine whether the reasons for the rejection were improper.").

In the present case, because the ALJ's decision completely failed to mention Dr. Martinez's finding that Carreau has a

seriously limited ability to deal with work-related stress, it is impossible to determine whether this evidence was considered and implicitly discredited or instead was simply ignored. See Cotter, 642 F.2d at 705.

## 1. **Evidence Presented at the Hearing**

The ALJ, at the March 23, 2000 hearing, called a vocational expert ("VE") to testify as to: (1) Carreau's ability to perform his prior work as a glazier; and (2) whether there were any jobs in the national economy that Carreau was capable of performing. Tr. at 297-303. The ALJ posed a hypothetical question to the VE which included numerous functional limitations. Tr. at 299-300. After concluding that those limitations would preclude an individual from returning to work as a glazier, the ALJ and the VE discussed the type and number of jobs in the national economy that a person with these limitations would be able to perform. Tr. at 300-303. The VE identified a number of light work jobs that an individual with those limitations could perform, including the following: sales person in building supplies, mail clerk, office helper, cashier, sales attendant, storage facility rental clerk, charge account clerk, recreation aide, car wash attendant, cafeteria attendant, and construction flagger. Tr.

300-02.

Despite Judge McAuliffe's instructions, the ALJ, in posing his questions to the VE, neglected to address Dr. Martinez's finding that Carreau has a seriously limited ability to deal with work-related stress.[6]

Acknowledging that the ALJ's prior decision failed to address the impact of Dr. Martinez's findings on Carreau's ability to work, Carreau's attorney proceeded to question the VE at length about whether an individual with a low tolerance for work-related stress could perform the jobs that the VE had previously identified.[7] Tr. at 308. The VE testified that unskilled work, as a general matter, is "not necessarily low stress work." Tr. at 310. The VE further testified that, of the jobs he had previously identified: (1) the jobs of mail clerk,

---

[6] In posing his questions to the VE, the ALJ included the postural limitations discussed in Judge McAuliffe's Order. I note, however, that the ALJ appears to have ignored Judge McAuliffe's instruction to consider the relevance of Carreau's need to pace himself while performing household chores. See Carreau, 1999 WL 814275, at *7-8.

[7] Upon questioning by Carreau's attorney, the VE testified that Carreau's learning disability, and his limited ability to read, write, and spell, would negatively impact his ability to perform the following jobs: office helper, storage facility rental clerk, and charge account clerk. Tr. at 307-08.

charge account clerk, and car wash attendant "would be relatively low stress jobs," Tr. at 309; (2) the job of cashier involves a "moderate degree of stress," id. at 308; (3) the job of fast food worker "would have greater than a moderate degree of stress", id. at 308; and (4) the job of sales person of building supplies "would range from moderate to high stress," id. at 308.

Carreau's attorney then asked the VE the following question:

Atty:    . . . if a worker only has the ability to accommodate low stress, because of problems with recurring pain, or medication side effects, would that eliminate the mail clerk, the charge account -- was it charge account clerk?

VE:    Yes.

Atty:    And the car wash attendant?

VE:    I don't feel that it would. I feel that those, again, are jobs that are not particularly stressful.

Tr. at 309. While the nature of the VE's answer is arguably open to interpretation, the parties have agreed, in their Joint Statement of Material Facts (the "Joint Stmt."), (Doc. No. 10), that the VE "opined that having only the ability to tolerate low stress would eliminate mail clerk and charge account clerk jobs, but not the car wash attendant jobs." Joint Stmt. at 27.

Upon further examination by Carreau's attorney, the VE

-16-

testified that an individual who also "had about a two to three hour siting capacity, total during the day," could not perform *any* of the previously indicated jobs, including the job of car wash attendant.[8]  Tr. at 314.

This testimony shows that Carreau's seriously limited ability to handle work-related stress would significantly reduce the number of jobs that he could perform.  Moreover, the VE's testimony supports a finding of "disabled" because his testimony suggests that an individual in Carreau's condition could not perform any job available in the national economy.  See Tr. at 314.  At the very least, the VE's testimony constitutes evidence that an ALJ should consider and evaluate in the course of reaching a decision.  See, e.g., 20 C.F.R. §§ 404.1520(a) ("We consider all evidence in your case record when we make a

---

[8]  This question appears to be based on the report of Dr. Neal, who concluded, after examining Carreau, that Carreau could only sit for fifteen minutes at a time and for a total of two to four hours per day.  Tr. at 229, 231.  Further support for this question comes from Dr. Edwin Wyman, who opined that "it is unlikely that [Carreau] is going to be able to [work in a job which requires] . . . prolonged periods of sitting."  Tr. at 201. Although Dr. Kilgus found no limitation on Carreau's ability to sit, Tr. at 224, the ALJ seems to have concluded that his opinion was entitled to less weight than those of other doctors because he did not actually treat Carreau.  Tr. at 257.

determination or decision whether you are disabled."),
404.1512(b) (defining "evidence" to include anything that a
claimant or "anyone else submits to [the SSA] that relates to" a
claim ).

## 2.  **The ALJ's Decision**

Despite the fact that Judge McAuliffe raised the issue of
Dr. Martinez's findings in his Order, and the fact that Carreau's
attorney raised it at the hearing, the ALJ's decision addresses
neither: (1) the validity of Dr. Martinez's finding that Carreau
has a "low," i.e., seriously limited, ability to deal with work-
related stress; nor (2) the impact of that finding on Carreau's
ability to perform jobs available in the national economy. See
generally 20 C.F.R. §§ 404.1520, 404.1527 (stating that the SSA
"will always consider the medical opinions" in the record and
describing how an ALJ should evaluate those opinions).

The background section of the ALJ's decision, while it
discusses some of Dr. Martinez's findings, does not mention the
issue of stress. See Tr. at 255-57.  Nor did the ALJ make any
findings regarding Carreau's ability to manage stress. See Tr.
at 258-59.

In his decision, the ALJ found that Carreau's "capacity for

-18-

light work has not been compromised by his nonexertional limitations." Tr. at 259. He further found that Carreau could perform a number of jobs, listing fast food worker and cashier as examples. Id.

These findings are contradicted by the VE's testimony that: (1) a seriously limited ability to deal with stress would significantly restrict the number of jobs that an individual could otherwise perform; and (2) an individual who also had a limited ability to sit could not perform any of the jobs that the had previously identified. Thus, it appears as though the ALJ reached his decision based solely on his own hypothetical questions to the VE, and improperly ignored the VE's answers to the questions posed by Carreau's attorney, which addressed Carreau's additional limitations. See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994) (holding that an ALJ may not rely on a VE's response to a hypothetical question which did not contain all of the claimant's limitations); Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991) (per curiam) (holding that an ALJ may credit a VE's testimony only if there is "substantial evidence in the record to support the description of the claimant's impairments given in the ALJ's

-19-

hypothetical" to the VE). Accordingly, the ALJ's decision was not based on substantial evidence. See, e.g., Rose, 34 F.3d at 19.

If the ALJ believed that Dr. Martinez's findings lacked an adequate foundation, he should have addressed those shortcomings in his decision and made appropriate findings.[9] See Weiler v. Shalala, 922 F. Supp. 689, 699-700 (D. Mass. 1996) (reversing the ALJ's decision because he failed to make an individualized assessment of the claimant's ability to handle stress); Diaz, 791 F. Supp. at 912; see generally 20 C.F.R. § 404.1527 (describing how an ALJ should evaluate medical opinions in the record). Moreover, if the ALJ doubted the VE's conclusion that an

_____

[9] The Commissioner argues that Dr. Martinez's findings lack clinical support. This argument is based on a tenuous reading of Dr. Martinez's report. For example, the Commissioner states that "[i]n discussing the plaintiff's current level of functioning, Dr. Martinez reported that in the area of adaption to work or work-like situations the plaintiff 'had no difficulty with adapting to stresses common to a work environment.'" Def.'s Mem. of Law In Support of Def.'s Mot. for Order Affirming the Decision of the Comm'r, (Doc. No. 9), at 16-17. The Commissioner fails to point out, however, that this quote from Dr. Martinez's report refers to Carreau's ability to deal with stress prior to his accident in May, 1993, and not to his current ability to deal with stress. Tr. at 242.

individual with Carreau's limitations could not perform any work currently available in the national economy, the ALJ should have questioned the VE further, sought additional evidence, and/or made appropriate findings on that issue. Instead, Dr. Martinez's findings stand uncontroverted. See Nguyen, 172 F.3d at 35 ("The ALJ [is] not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical evidence."); Suarez, 740 F.2d at 1 (holding that an ALJ "is not at liberty simply to ignore uncontroverted medical reports."). Assuming that those findings are correct, the VE's testimony contradicts the ALJ's findings and his ultimate conclusion that Carreau is not disabled. Accordingly, I conclude that the Commissioner's decision is not supported by substantial evidence. See Nguyen, 172 F.3d at 35.

## B. Remedy

Because the Commissioner has had two opportunities to carry his burden at step five, Carreau argues that a remand for further fact-finding proceedings would be inappropriate. Instead, Carreau asks that I remand with directions to award benefits to him. I agree.

When a court finds that the administrative record is

incomplete, a court should generally vacate the Commissioner's decision and remand the matter for further factfinding. See 42 U.S.C. § 405(g); Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st Cir. 1987) ("remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing"). Where, however, the "claimant has made out a prima facie case for benefits and the Commissioner . . . does not present the required evidence of the claimant's ability to perform work that exists in the national economy, the appropriate relief is an award of benefits absent some good cause for the evidentiary gap." Field v. Chater, 920 F. Supp. 240, 244-45 (D. Me. 1995); see Curry, 209 F.3d at 124 ("Because the Commissioner failed to sustain his burden on the fifth step . . ., remand for the sole purpose of calculating an award of benefits is mandated."); Nielson v. Sullivan, 992 F.2d 1118, 1122 (10th Cir. 1993); Allen v. Bowen, 881 F.2d 37, 44 (3d Cir. 1989); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 312-13 (D. Mass. 1998).

The Commissioner chose not to address Carreau's request that

I remand this case for a determination of benefits. His memorandum of law does not suggest, nor do I discern, that there is any new evidence requiring a remand for a rehearing. Nor does the Commissioner contend that the ALJ had good cause for not addressing Dr. Martinez's findings. Indeed, the ALJ's failure to address this issue is baffling, given Judge McAuliffe's prior Order and the testimony of the VE upon examination by Carreau's attorney. See Nielson, 992 F.2d at 1122 (awarding benefits where the defendant "has not articulated any reason why he made no findings" relating to the disputed issue); Allen, 881 F.2d at 44 (awarding benefits where the defendant failed to show good cause for not satisfying his burden).

I see no reason why the Commissioner should be allowed a third opportunity to satisfy his burden of showing, by substantial evidence, that Carreau is capable of performing specific jobs in the national economy. See Allen, 881 F.2d at 44; Schonewolf v. Callahan, 972 F. Supp. 277, 290 (D.N.J. 1997) (refusing to remand for a third hearing). The ALJ had two opportunities to present evidence to rebut or contradict Dr. Martinez's findings; and he had ample opportunity at the second hearing to question the VE as to the impact of Dr. Martinez's

-23-

findings on Carreau's ability to work. See Rohrberg, 26 F. Supp. 2d at 312; see also Aguiar v. Apfel, 99 F. Supp. 2d 130, 140 (D. Mass. 2000). Moreover, the fact that Carreau's application for benefits has been pending for five years and that a remand for a third hearing "could result in substantial, additional delay" weighs against a rehearing. Curry, 209 F.3d at 124; see Field, 920 F. Supp. at 244 (discussing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983)).

Because the Commissioner has already found that Carreau has significant exertional limitations and cannot return to his prior employment, and because the Commissioner failed to satisfy his burden of showing, by substantial evidence, that Carreau is capable of performing specific jobs in the national economy, I reverse the Commissioner's decision and remand this case for the purpose of calculating and awarding benefits. See 42 U.S.C. § 405(g); Curry, 209 F.3d at 124.

## IV. CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion for an order affirming the decision of the Commissioner, (Doc. No. 9). I grant Carreau's motion for an order reversing the

decision of the Commissioner, (Doc. No. 7), and remand this case

to the Commissioner for the purpose of calculating and awarding

benefits.  The Clerk shall enter judgement accordingly.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


May 31, 2001

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.