Sharon WEILER, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

CA. No. 93–12067–JLT.

United States District Court,
D. Massachusetts.

March 21, 1996.

Sandra L. Smales, Boston, MA, for plaintiff.

Charlene A. Stawicki, United States Attorney's Office, Boston, MA, for defendant.

## MEMORANDUM

TAURO, Chief Judge.

### I.

### INTRODUCTION

This case comes on Plaintiff's Motion to Reverse or Remand the Decision of the Secretary of Health and Human Services (the "Secretary") and on Defendant's corresponding Motion for Order Affirming the Decision of the Secretary. The court has jurisdiction to review the final decision of the Secretary denying disability insurance benefits and Supplemental Security Income. 42 U.S.C.A. §§ 405(g), 1383(c)(3) (West 1994). Because the court finds that the Secretary improperly concluded that Plaintiff is not disabled within the meaning of the Social Security Act, 42 U.S.C.A. § 423(d)(1)(A), (d)(2)(A,B), the final decision of the Secretary is reversed and the case is remanded to the Secretary for further proceedings consistent with this opinion.

### II.

### BACKGROUND

Plaintiff Sharon Weiler was born March 27, 1950. She was forty-two years old at the time of the Administrative Law Judge's (the "ALJ") decision. Transcript of Entire Record at 43 ("Tr __").

Weiler graduated from high school in 1968. (Tr. 44). Since her graduation, she had been employed at a variety of jobs, mostly secretarial. (Tr. 47). Her most recent position was a secretary in the office of a medical doctor. (Tr. 48).

Weiler has had a long history of treatment for pain, anxiety, and depression. The conglomeration of these ailments caused Weiler to leave her position as a medical secretary on October 5, 1990. (Tr. 47).

On June 9, 1991, Weiler filed an application for a period of disability and for disability insurance benefits. (Tr. 79–81). The Social Security Administration denied her application initially and on reconsideration. (Tr. 104–105). On September 22, 1992, the ALJ considered the case de novo and found that Weiler was not disabled. (Tr. 16–27). On July 21, 1993, the Appeals Council denied her

request for review, thereby rendering the ALJ's decision the final decision of the Secretary, subject to this court's review.

The evidence before the ALJ at the hearing was as follows:

In October 1984, Weiler entered the Newton–Wellesley Hospital emergency room suffering from acute abdominal pain and pain in various parts of her body. (Tr. 255). When no significant medical findings accounted for her pain, Weiler was admitted to the psychiatric unit, where she began receiving treatment from Dr. William Waterman, a psychiatrist. (Tr. 255–257). Dr. Waterman stated that Weiler's emotional difficulties partially stemmed from the death of her mother in 1983 and her hysterectomy that same year. (Tr. 255). Dr. Waterman diagnosed Weiler with chronic physical symptoms resulting from stress. (Tr. 256). In mid-November 1984, Weiler was transferred to the Options Day Treatment Program.

Weiler soon after returned to work. She continued to receive treatment from Dr. Waterman until September 1989, when Weiler's internist, Dr. Hubert I. Caplan, agreed to maintain her with small doses of Imipramine. (Tr. 190).

Dr. Caplan began treating Weiler in 1984 for rheumatic syndrome consisting of mainly "nonarticular rheumatism[1] with manifestations such as sacroiliitis,[2] trochanteric bursitis,[3] fibromyositis,[4] [and] spondylitis."[5] (Tr. 186). This treatment continued until September 1990. (Tr. 186).

1. A disease marked by inflammation of the connective tissue, especially the muscles and joints, often accompanied by pain in these parts. *Dorland's Medical Dictionary* 1319· (24th Ed.1965).

2. A condition marked by inflammation in the sacro-iliac joints. *Dorland's Medical Dictionary* 1337 (24th Ed.1965).

3. A condition marked by inflammation of the femur and its surrounding muscles. *Dorland's Medical Dictionary* 1620 (24th Ed.1965).

4. Inflammation and fibrous degeneration of a muscle. *Dorland's Medical Dictionary* 555 (24th Ed.1965).

5. A condition manifested by inflammation of the vertebrae. *Dorland's Medical Dictionary* 1426 (24th Ed.1965).

In October 1990, Weiler terminated her job as a medical secretary due to stress. (Tr. 187). At about the same time, Weiler began treatment with Dr. William F. Winchell, a rheumatologist. (Tr. 189).

In April 1991, Weiler again developed abdominal pain for which she was hospitalized. (Tr. 164). Although the principal diagnosis was a ruptured ovarian cyst, the physicians also noted anxiety, depression, gastrointestinal disorders, and irritable bowel syndrome. (Tr. 164, 180). X-rays taken of Weiler's gastro-intestinal tract also revealed marked degenerative disc disease. (Tr. 176).

Dr. Waterman recommended treatment of Weiler at this time. (Tr. 173). In a report, dated April 28, 1991, Dr. Waterman noted Weiler's considerable emotional pain from the loss of her job. He stated that Weiler suffers from chronic recurrent depression often manifested by somatic pain with a somewhat histrionic personality. (Tr. 173). Dr. Waterman recommended that her pain be treated with "whatever analgesics and narcotics necessary." (Tr. 173). Eventually, Dr. Waterman prescribed Xanax and Imipramine.

In a report, dated July 25, 1991, Dr. Winchell stated that physical examinations revealed multiple trigger points and tenderness of the joints without any soft tissue swelling or redness. (Tr. 189). As a result of these findings and Weiler's clinical history, Dr. Winchell diagnosed her with fibromyalgia.[6]

6. Fibromyalgia, also known as fibrositis, is an inflammation of fibrous tissue and is common among women aged twenty to fifty. *Attorney's Textbook of Medicine* 176 § 35 (3rd ed. 1995). The condition can be a complication of hypothyroidism (a deficiency in the activity of the thyroid gland), rheumatoid arthritis, sleep disorders, depression and viral infections. *Id.* Usually, however, no etiology is present. Objective signs of inflammation are absent, and no specific laboratory or diagnostic tests have been developed. *Id.* Rather, diagnosing fibromyalgia is a process of exclusion and the testing of certain "focal tender points on the body for acute tenderness which is characteristic in fibrositis patients." *Preston v. Secretary of Health and Human Services,* 854 F.2d 815, 817–18 (6th Cir.1988) (per curiam).

A person with fibromyalgia can experience chronic aching pain and stiffness, frequently involving the entire body, fatigue, subjective numb-

(Tr. 189). He concluded that Weiler's work capacity is "markedly diminished secondary to her musculoskeletal discomfort and [she] would definitely have difficulty standing or walking, lifting, or bending." (Tr. 189).

In June 1991, Weiler began seeing Dr. Lawrence Bader, a psychologist, for her depression. (Tr. 214). At that time, Dr. Bader stated that Weiler had low self-esteem, was extremely sensitive to rejection, and had significant difficulty asserting herself. (Tr. 214). Weiler began group therapy sessions with Dr. Bader soon after. (Tr. 214).

Dr. Waterman continued to provide regular psychotherapy for Weiler. In July 1991, Dr. Waterman reported that Weiler continued to have numerous somatic symptoms for which Dr. Winchell was providing treatment. (Tr. 207). On August 7, 1991, Dr. Waterman diagnosed Weiler· with neurotic depressive disorder, manifested by depressed mood and somatic concerns. (Tr. 190). On a personal level, Dr. Waterman stated that Weiler has no suicidal ideas, takes care of herself and her household, and can relate to others. (Tr. 191). On a work level, however, Dr. Waterman found that Weiler has significant difficulty dealing with supervision, is overly sensitive to criticism, and becomes angry when slighted. (Tr. 191). Dr. Waterman concluded that Weiler would do best in a job in which she was not subject to close supervision. (Tr. 191).

In August 1991, Dr. Harold B. Schiff evaluated Weiler for low back pain. (Tr. 209). After conducting the usual neurological examinations, he diagnosed spinal stenosis and lumbo-sacral degenerative joint/disc disease. (Tr. 209). After four months of physical therapy, Dr. Schiff found no improvement in Weiler's condition. (Tr. 238). In December 1991, Dr. Schiff confirmed the diagnosis of lumbo-sacral degenerative joint disease based on the results from a CAT scan, myelogram, EMG, and a MRI. (Tr. 238). Weiler told Dr. Schiff that this pain makes it difficult for her to bend, sit, or stand for any length of time. (Tr. 238). Weiler was hospitalized for five days in December 1991 due to acute exacerbation of her back pain. (Tr. 238).

On December 17, 1991, Dr. Bader diagnosed Weiler with anxiety disorder. (Tr. 192). Although, Dr. Bader stated that Weiler was "very social", he described her ability to remember work-like tasks as varied, her self-esteem as low, and her ability to deal with stress as mixed. In coping with these difficulties, Dr. Bader stated that she needs a semi-structured environment, with a lot of positive feed back. (Tr. 192). Dr. Bader found that Weiler's prognosis was good, if she continued therapy. (Tr. 192).

As part of her claim for disability benefits, Weiler was examined on January 30, 1992 by Dr. Bernard Shepen, a consultative physician. (Tr. 197). Dr. Shepen found that, although Weiler had a multitude of symptoms, there existed no objective evidence of disability. (Tr. 198). Specifically, Dr. Shepen rejected a diagnosis of "fibromyalgia" because it is a "controversial term" and "a number of qualified physicians feel that it is a non-entity." (Tr. 198).

Two non-examining Disability Determination Service Review Physicians ("DDS doctors") reviewed some of the evidence in the case and issued two Psychiatric Review Technique ("PRT") forms. The PRTs are dated August 16, 1991 and January 13, 1992, respectively. The reports indicate that Weiler suffers from slight to moderate difficulties in maintaining social functioning, and seldom deficiencies in concentration persistence or pace. (Tr. 91, 111).

An accompanying Mental Residual Functional Capacity Assessment (the "MRFCA") noted that Weiler suffers from moderate limitations in her ability to accept instructions, respond to criticism, and adapt to changes in the work setting. (Tr. 100–02). The MRFCA also noted that Weiler has no limitations in memory, understanding, concentration, or persistence. (Tr. 100–01).

In June of 1992, Dr. Frederick L. Makrauer, a gastroenterologist, examined Weiler to evaluate her frequent and painful gas at-

ness, chronic headaches, and irritable bowel symptoms. *Attorney's Textbook of Medicine* 176 § 35. Moreover, a person often feels incapable of performing normal activities, and even minor exertions aggravate the pain and increase fatigue. *Id.*

tacks. (Tr. 201). Dr. Makrauer stated that Weiler has suffered from these gas attacks for the past ten years. The gas attacks cause painful swallowing, epigastric tenderness and belching which "has frightened and demoralized her." (Tr. 201).

On September 16, 1992, Dr. Schiff reiterated his diagnosis of degenerative disc disease and added that at times Weiler's back pain can be disabling. (Tr. 206).

On September 21, 1992, Dr. Bader stated that Weiler has missed sessions of group therapy because of physical limitations or psychological distress. Dr. Bader went on to state that Weiler is "limited by severe fears of failure, and tremendous stress under conditions that would not disturb others" and has a "long way to go" to deal with these problems. (Tr. 205). Dr. Bader concluded that he supports Weiler's request for disability benefits. (Tr. 205).

At the time of the hearing on September 22, 1992, Weiler was taking the following medications: Premarine to help her deal with heavy periods, Synthroid to deal with hypothyroidism, Lopid for cholesterol, Prilosec for esophageal spasms, Dyazide for fluids, Quinine for cramps, Xanax to relax, and Sinnequan for depression. (Tr. 203–204). At the hearing, the ALJ heard testimony from Weiler as well as from Stephen Duclos, a vocational expert.

When Weiler appealed the ALJ's decision to the Appeals Council she submitted a research paper on fibromyalgia by Robert M. Bennet, M.D. entitled "The Fibrositis–Fibromyalgia Syndrome" in *Primer on the Rheumatic Diseases* 227–30 (H. Ralph Schumacher, Jr. M.D., 9th ed. 1988).[7] (Tr. 268–271).

### III.

### STANDARD OF REVIEW

■ The court reviews the Secretary's findings of fact to determine if they are supported by substantial evidence. 42

U.S.C.A. § 405(g); *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Where the facts permit diverse inferences, the court will affirm the Secretary's decision even if the court might have reached a different result. *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir.1981).

■ This deferential standard of review, however, is not applicable to the Secretary's conclusions of law. 42 U.S.C.A. § 405(g); *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982); *Anderson v. Secretary of Health and Human Services,* 634 F.Supp. 967, 971 (D.Mass.1984). Failure of the Secretary to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the Secretary applied the correct legal standards are grounds for reversal. *Wiggins,* 679 F.2d at 1389.

### IV.

### ANALYSIS

Weiler maintains that the Secretary's decision should be reversed or remanded because the evidence, when properly considered, requires a finding of disability.

#### A. *Framework of Inquiry*

Under the Social Security Act, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). In addition, an individual's physical or mental impairment is not disabling under the Act unless it is "of such severi-

---

7. Administrative Appeals Judge Gabriel E. DePass issued an order on July 20, 1993 stating, *inter alia,* that the article was made part of the record. (Tr. 7).

The court can consider this evidence in determining whether substantial evidence existed in

the record for the ALJ's decision. *See Riley v. Shalala,* 18 F.3d 619, 622 (8th Cir.1994) (court determined whether ALJ's decision was supported by substantial evidence based on record as a whole, including new evidence submitted after ALJ's decision was made).

ty that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. § 423(d)(2)(A).

■ In making this determination of disability, the ALJ must employ a five-step sequential analysis. 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6 (1st Cir.1982). The ALJ must ascertain (1) whether claimant has engaged in any substantial gainful activity since the onset of her impairment(s); (2) whether claimant has demonstrated a medically determinable and severe impairment; (3) whether the impairment is equivalent to one specifically listed in 20 C.F.R. § 404 Subpart P, App. 1 (which would result in a presumption of disability); (4) whether the impairment prevents claimant from performing her past relevant work activities, and if so (5) whether claimant could perform other work found in the national economy. 20 C.F.R. § 404.1520; *Goodermote,* 690 F.2d at 6–7. The analysis ends at any step that resolves whether or not the claimant is disabled. 20 C.F.R. § 404.1520(a).

Here, the ALJ determined at Step 1 that Weiler had not engaged in substantial gainful activity since October 5, 1990. (Tr. 21). At Step 2, the ALJ determined that Weiler' impairments together qualify as severe. (Tr. 21). At Step 3, the ALJ determined that Weiler has degenerative disease of the lumbar spine, anxiety with depression, and a somatoform disorder, but that she did not have a condition or conditions which met or equalled the criteria of a listed impairment in Appendix I of the Secretary's Regulations, 20 C.F.R. § 404.1520(d). (Tr. 23). The evaluation then proceeded to Step 4.

Step 4 required the ALJ to determine whether Weiler's residual functional capacity ("RFC")[8] prevents her from performing her past relevant work ("PRW"). 20 C.F.R. § 404.1520(e); *Dudley v. Secretary of Health and Human Services,* 816 F.2d 792, 794 (1st Cir.1987). Weiler bore the burden of show-

ing that her functional incapacity renders her unable to perform her PRW. *See Santiago v. Secretary of Health and Human Services,* 944 F.2d 1, 5 (1st Cir.1991); *Torres v. Secretary of Health and Human Services,* 870 F.2d 742, 745 (1st Cir.1989). The ALJ found that Weiler failed to meet her burden.

Although the ALJ found that Weiler had degenerative joint disease of the lumbar spine, anxiety with depression, and a somatoform disorder, he concluded that Weiler's testimony concerning the severity of pain associated with these impairments was "not consistent with the medical and other evidence of record." (Tr. 20–21). The ALJ then found that Weiler had the RFC to perform "work related activities except for work involving lifting more than 20 pounds occasionally and up to 10 pounds frequently or performing work requiring exposure to the stress of more than semi-skilled work activity." (Tr. 21). On the basis of these findings, the ALJ concluded that Weiler was able to perform her PRW as a secretary and, thus, denied her claim for disability benefits. (Tr. 21).

Weiler maintains that if the ALJ properly evaluated all of the medical evidence applying the correct legal standards at Step 4, he would have concluded that she suffered from a permanent impairment that rendered her disabled. Specifically, Weiler contends that the ALJ erred in four respects: (1) by failing to give controlling weight to the opinions of Weiler's treating physicians; (2) by improperly rejecting Weiler's testimony concerning her pain; (3) by failing to make an individualized assessment of Weiler's ability to handle stress; and (4) by failing to consider the combination of Weiler's impairments in making the disability determination.

*B.   The ALJ should have given controlling weight to Weiler's treating physicians, Drs. Waterman, Bader, and Winchell*

■ Although resolution of conflicts in the medical evidence is reserved to the Secre-

---

**8.** The RFC represents the work that Weiler can still do despite her limitations. *See* 20 C.F.R. § 404.1545.

tary, *Barrientos v. Secretary of Health and Human Services*, 820 F.2d 1, 2–3 (1st Cir. 1987), he cannot ignore the regulations that define how to calculate the weight afforded to a certain opinion. *See* 20 C.F.R. § 404.1527.

Generally, the ALJ should give "more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimants medical impairments." 20 C.F.R. § 404.1527(d)(1). In fact, the ALJ must "give controlling weight to the opinions of treating physicians if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." *Id.* at (d)(2).[9]

When the ALJ does not give controlling weight to the treating physician's opinion, he must apply several factors to determine its weight. *Id.* These factors include:

1) the source's knowledge about the claimants impairments based on the length, nature, and extent of treatment;

2) evidence, particularly in the form of medical signs and laboratory findings, that supports the source's opinion;

3) the source's opinion is consistent with other evidence in the record; and/or

4) the source's opinion is about medical issues related to his/her specialty.

*Id.* at (d)(2)(i), (d)(3), (d)(4), and (d)(5).

The first question the court must address is whether Drs. Waterman, Bader, and Winchell were Weiler's "treating physicians" for purposes of the regulations. The regulations broadly define the term "treating physician" as any physician who "has provided [the claimant] with medical treatment or evalua-

tion and who has or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.[10] In making this determination, the ALJ should look to medical evidence that establishes that the claimant has been seen by the physician with "a frequency consistent with accepted medical practice for the type of treatment and evaluation required for ... [the claimant's] medical condition(s)." *Id.*

Here, there is no question that Drs. Waterman, Bader, and Winchell were Weiler's treating physicians. Although the ALJ did not specifically find that these doctors were Weiler's treating physicians, a finding to the contrary would be unsupported by substantial evidence. The record incontrovertibly shows that each doctor provided a course of treatment for Weiler's respective ailments. As such, the ALJ had to follow the treating-physicians rule in determining the proper weight to give to their opinions.

### 1. The ALJ should have given controlling weight to the findings of Drs. Waterman and Bader

■ Weiler contends that the ALJ failed to accept the findings of Drs. Waterman and Bader that described the functional limitations of her mental impairments. The court agrees.

In the ALJ's decision, he accepted Drs. Waterman and Bader's diagnosis that Weiler suffered from depression, anxiety disorder, and a somatoform disorder. (Tr. 21, 23). The ALJ, however, declined to adopt their findings with respect to the functional limitations these disorders imposed on Weiler's capacity to perform her PRW. Instead, the record indicates that the ALJ adopted the findings of the DDS doctors.

**9.** Before the promulgation of these regulations in 1991, the First Circuit rejected the so called treating-physicians rule, *see, e.g., Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982), instead choosing to adopt the rule that the opinion of a treating physician was entitled to no greater weight than any other opinion. Other circuits disagreed and adopted the treating-physicians rule. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 81 (2nd Cir.1986).

The Social Security Administration resolved the circuit split by siding with those circuits adopting the treating-physicians rule. In adopt-

ing 20 C.F.R. § 1527, the Agency was guided by two principles. First, that treating source evidence tends to have a special intrinsic value by virtue of the treating source's relationship with the claimant. Second, that if the Secretary decides to reject such an opinion, he should provide the claimant with good reasons for doing so. 56 F.R. 36932, 36934 (August 1, 1991).

**10.** The opinion of a treating psychologist is considered an acceptable medical source under the treating-physicians rule. 20 C.F.R. § 404.1527.

The ALJ completed a Psychiatric Review Technique (the "PRT") form. In the PRT, the ALJ was required to determine the functional limitation and degree of limitation for Weiler's disorders. He found that Weiler has a slight restriction of activities of daily living, moderate difficulty in maintaining social functioning, and seldom deficiencies of concentration and persistence of pace resulting in a failure to complete tasks in a timely manner. (Tr. 26). The ALJ also found that Weiler has only experienced one or two episodes of deterioration or decompensation in work settings which caused her to withdraw from that situation or to experience exacerbation of signs and symptoms. (Tr. 26).

The ALJ's PRT essentially mirrors the PRTs completed by the DDS doctors. The PRTs contradict the conclusions of Drs. Waterman and Bader. Both Dr. Waterman, Weiler's treating psychiatrist, and Dr. Bader, Weiler's treating psychologist, found moderate to severe limitations in Weiler's capacity to control her fear of failure, to cope with supervision, to handle ordinary work pressures, to reign in her anger, and to deal with a changing work environment.

In concluding that Weiler has the RFC to perform her PRW, the ALJ found that "[Weiler] has not been described as having any limitations in her capacity to perform work activity by a treating psychologist or psychiatrist." (Tr. 19). Moreover, with respect to Dr. Bader's opinion, the ALJ noted that although Dr. Bader concluded that Weiler suffers from a sense of failure and reaction stress, he did not provide a clinical reason for any functional limitation. (Tr. 19–20).

In making these findings, the ALJ was in essence accepting the opinions of the DDS doctors over two of Weiler's treating-physicians. This was in error.

■ The ALJ should have given controlling weight to the findings of Drs. Waterman and Bader as to Weiler's functional limitations. The *only* evidence contradicting Drs. Waterman and Bader comes from the two non-examining DDS doctors. Under the treating-physicians rule, reports from non-examining doctors cannot by themselves trump the findings from treating sources.

*See Lester v. Chater,* 69 F.3d 1453, 1463 (9th Cir.1995) (the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician). Moreover, there exists no evidence in the record which could reasonably support the conclusion that the findings of Drs. Waterman and Bader are medically unsupported and inconsistent with other substantial evidence in the record. Rather, the only reasonable interpretation from the record is that the findings of both doctors are medically supported based on their years of treatment, clinical observations, and other independent medical reports substantiating her somatoform disorder. The ALJ, therefore, had to give controlling weight to the findings of Drs. Waterman and Bader. The court, therefore, remands the case to the Secretary to make an assessment of Weiler's RFC based on the functional limitations articulated by Drs. Waterman and Bader.

### 2. The ALJ should have given controlling weight to Dr. Winchell's diagnosis of fibromyalgia

■ The ALJ rejected Dr. Winchell's diagnosis of fibromyalgia based on the opinion of Dr. Shepen, the consultative physician. Dr. Shepen stated that:

> fibromyalgia is a controversial term. A number of qualified physicians feel that it is a nonentity. Others equally qualified feel it is a recognized and real entity. Be that as it may, it often occurs in depressed people and most often women.

(Tr. 198). Dr. Shepen concluded that there is no "physical indication to categorize [her] as being physically disabled. (Tr. 198). Although the ALJ does not say so explicitly, the record strongly suggests that he found *sub silentior* that fibromyalgia is not a disease. In fact, the ALJ does not even mention Dr. Winchell's diagnosis of fibromyalgia. Substantial evidence does not support the ALJ's conclusion.

To determine whether substantial evidence existed in the record for the ALJ's conclusion, the court looks to the research article

on fibromyalgia as well as the findings of Dr. Winchell and Dr. Shepen.

The article on fibromyalgia stated that "research efforts over the last decade have provided [a basis] for considering fibrositis as a diagnostic label attended by typical history and physical findings." (Tr. 268). This article contains over twenty citations to other scholarly journals describing the symptomatology, etiology, and course of treatment for fibromyalgia. (Tr. 271). Moreover, Dr. Winchell, as a specialist in rheumatology, recognized fibromyalgia as an actual disease by diagnosing Weiler with the condition. Instead of accepting this evidence, the ALJ decided to adopt Dr. Shepen's off the cuff comment that fibromyalgia might not exist. Dr. Shepen did not refer to any studies to support his conclusion. In light of this evidence, the court finds that the ALJ did not have before him substantial evidence to conclude that fibromyalgia does not exist as a disease.[11] As such, the court must now determine whether the ALJ committed an error of law by failing to accept Dr. Winchell's diagnosis that Weiler suffered from fibromyalgia.

Dr. Winchell, a specialist in the field of rheumatology, diagnosed Weiler with fibromyalgia after a year of treatment. The diagnosis was based on Weiler's previous rheumtological problems as described by Dr. Caplan and on Dr. Winchell's own clinical findings of tender focal points.

The ALJ decided to ignore Dr. Winchell's diagnosis and instead accept Dr. Shepen's findings that Weiler did not suffer from this condition, assuming it existed. In essence, the ALJ chose to adopt the opinion of a non-treating source over the opinion of a treating source.

The Social Security Administration (the "Agency") has described the application of the treating-physicians rule when the ALJ is faced with competing opinions from a non-

treating source and a treating source. The Agency stated:

> [A]ll things being equal, when a treating source has seen a claimant's impairment(s), we will always give greater weight to the treating source's opinion than to the opinion of non-treating sources even if the other opinions are also reasonable or even if the treating source's opinion is inconsistent with other substantial evidence of record.

56 F.R. 36932, 36936 (August 1, 1991).

Here, all things were equal because the only evidence on whether Weiler had fibromyalgia came from either Dr. Winchell, the treating source, or Dr. Shepen, the non-treating agency consultant. As such, under the treating-physicians rule, Dr. Winchell's opinion was entitled to controlling weight. The ALJ therefore committed an error of law by rejecting Dr. Winchell's diagnosis.

Because the ALJ did not consider the potentially debilitating effects of fibromyalgia, he did not have before him all of the necessary evidence to fully and fairly evaluate whether Weiler is disabled. The court therefore concludes that remand is warranted.

On remand, the ALJ must first determine whether Weiler's fibromyalgia is a listed impairment, or medically equal to one listed in 20 C.F.R. § 404 Subpart P, App. 1. If he finds such, then he must find her disabled. If the ALJ finds that Weiler's fibromyalgia is not listed nor medically equal to a listed impairment, then he must determine Weiler's RFC by taking into account her fibromyalgia together with her other impairments.

### C. The ALJ improperly rejected Weiler's testimony concerning the severity of her pain

■ Weiler claims that the ALJ improperly rejected her testimony regarding the severity of her pain. In determining whether a claimant is disabled, the ALJ must consider all of the claimant's symptoms, including

---

**11.** Fibromyalgia has been recognized by courts as being potentially disabling. *See Lisa v. Secretary of Health and Human Services*, 940 F.2d 40, 43–45 (2nd Cir.1991); *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817–18 (6th Cir.1988) (per curiam); *Tsarelka v. Secre-* *tary of Health and Human Services*, 842 F.2d 529, 533 (1st Cir.1988); *Smith v. Schweiker*, 728 F.2d 1158, 1162 (8th Cir.1984); *Laplante v. Shalala*, 898 F.Supp. 30, 33 (D.Mass.1995); *Bourassa v. Shalala*, 844 F.Supp. 853, 855 (D.Mass.1994).

pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence as well as other evidence in the record. *See* 20 C.F.R. § 404.1529; *Avery v. Secretary of Health and Human Services,* 797 F.2d 19, 23 (1st Cir.1986). A claimant's statements about her pain or other symptoms will not alone establish disability. 20 C.F.R. § 404.1529(a). There must also be medical evidence to show that the claimant's impairment(s) could reasonably be expected to produce the pain alleged. 20 C.F.R. § 404.1529(a).

At the hearing, Weiler testified that she has anxiety attacks when dealing with supervisors who criticize her work and becomes extremely agitated when she knows that she has to perform tasks that she cannot handle. (Tr. 55–56).

Weiler further testified that she has anxiety attacks at least once a day brought on by stress. The anxiety attacks cause her to experience pain in her stomach and tingling down her arms. During the attacks, Weiler's body shakes. The shaking usually lasts the duration of the attack. (Tr. 56). Weiler also testified that during the anxiety attacks she has difficulty breathing, and often has to lie down to calm herself. (Tr. 56).

Weiler also testified that when she becomes stressed her ability to remember and concentrate decreases. (Tr. 58). She stated that during her last job, she often had problems remembering tasks she was assigned to complete, feared being put on the spot, and sometimes felt anxiety when meeting new people. (Tr. 59).

■ In rejecting Weiler's complaints of pain, the ALJ concluded that her testimony was not consistent with the medical evidence in the record. (Tr. 20). In evaluating the severity of Weiler's pain, the ALJ had to make a credibility determination. Although, the ALJ has the power to resolve credibility issues, *Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1st Cir. 1991), that determination must be supported by substantial evidence. *Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir.1986).

■ The ALJ's decision to reject the functional limitation findings of Drs. Waterman and Bader as well as the diagnosis of Dr. Winchell, prevented the ALJ from having before him all of the evidence necessary to fully and fairly evaluate Weiler's credibility. As such, the court cannot determine whether substantial evidence existed for the ALJ's decision to reject Weiler's testimony. The court, therefore, remands the case to the Secretary to re-evaluate Weiler's credibility through the findings of Drs. Waterman, Bader, and Winchell.

*D. The ALJ committed an error of law by failing to make an individualized assessment of Weiler's ability to handle stress in the work place*

■ Weiler contends that the ALJ committed an error of law by failing to make an individualized assessment as to Weiler's ability to handle stress. The court agrees.

In examining the effects of stress on her capacity to work, the ALJ primarily relied on the vocational expert's testimony. The ALJ summarized his conclusions as follows:

> Vocational expert, Stephen C. Duclos, testified that the claimant's past relevant work was sedentary and at least semi-skilled in requirements. He did testify that generally unskilled jobs are less stressful, but he noted that based on Dr. Bader's 1991 evaluation, while her perception of pain could tend to adversely affect her concentration, she was able to get along with others. The vocational expert testimony supports the conclusion that the claimant could return to her past relevant work as a secretary, at least in the less stressful secretarial positions, which exist in large numbers.

(Tr. 20).

The ALJ's decision to focus on the amount of stress in a particular job rather than on Weiler's ability to handle stress was in error. Stress is not a characteristic of a particular job but instead "reflects individual's subjective response to a particular situation." *Lancellotta v. Secretary of Health and Human Services,* 806 F.2d 284, 285 (1st Cir. 1986).

The Agency has recognized the importance of examining a claimant's individual capacity to handle stress:

> Determining whether [mentally impaired] individuals will be able to adapt to the demands or "stress" of the work place is often extremely difficult. This section is ... intended ... to emphasize the importance of thoroughness in evaluation on an individualized basis ... The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the work place for a full day.... Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

Social Security Ruling 85–15 (Supp.1986). The Agency further stated that:

> Consideration of these factors [ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting] is required for the proper evaluation of the severity of mental impairments.

Social Security Ruling 85–16.

Based on the colloquy with the vocational expert, the ALJ concluded that Weiler, although unable to perform work in high stress secretarial positions, would be able to work in a low stress secretarial positions. In doing so, the ALJ placed the focus of the inquiry on the amount of stress in a particular job rather than on Weiler's individual ability to handle stress. This was in error. The ALJ failed to adequately consider the effects of stress on Weiler's ability to perform her PRW. Specifically, the ALJ failed to make findings on the nature of Weiler's stress, the circumstances that aggravate it, or how stress affects her ability to function in a work environment. Accordingly, the court remands to the Secretary to make an assessment of Weiler's vocational capabilities in light of her mental impairments. *See Stokes v. Schweiker,* 729 F.2d 932, 935 (3d Cir.1984)

(claimant found able to perform work "except employment 'involving high stress and significant interpersonal relations' "; remanded for consideration of vocationally relevant factors listed in SSR 85–16).

### E. The ALJ did not consider the combined effects of Weiler's impairments

To determine whether a claimant is disabled the Secretary must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(C); *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1126 (1st Cir.1986).

Here, the ALJ did not consider Weiler's fibromyalgia. For the reasons explained above this was error. Accordingly, the court remands to the Secretary for assessment on whether Weiler's combined impairments prevent her from performing her PRW.

### V.

### CONCLUSION

For the reasons discussed above, the Plaintiff's Motion for Order Reversing or Remanding the Decision of the Secretary is ALLOWED, and the Defendant's Motion for Order Affirming the Decision of the Secretary is DENIED. The case is remanded to the Secretary for further proceedings consistent with this opinion.