Kent Alexander TAYLOR, Plaintiff

v.

Michael J. ASTRUE, Commissioner of
Social Security Administration,
Defendant.

Civil Action No. 11–cv–30282–KPN.

United States District Court,
D. Massachusetts.

Oct. 22, 2012.

Tricia M. Jacobs, Law Offices of Thomas Libbos, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 11 and 14)*

KENNETH P. NEIMAN, United States Magistrate Judge.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3). Kent Alexander Taylor ("Plaintiff") asserts that the Commissioner's decision denying him such benefits—memorialized in a July 27, 2011 decision of an administrative law judge—is in error. He has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the following reasons, the court will deny the Commissioner's motion to affirm and allow Plaintiff's motion for judgment on the pleadings to the extent it seeks a remand.

I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of*

*Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

■■■■■ The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir.1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff applied for SSI benefits on August 20, 2009. (Administrative Record ("A.R.") at 124–130.) Plaintiff claimed he was disabled due to a herniated disc and numbness in his left leg and foot, with a disability onset date of November 1, 2008. (*Id.* at 124, 134–35 142.) After Plaintiff's application was denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge ("ALJ"), which hearing was held on May 20, 2011 (*Id.* at 25, 58–60, 66–68.)

Plaintiff, who was forty-five years old at the time of the hearing, testified that he previously worked as a siding installer, landscaper, and construction and maintenance worker. (*Id.* at 32–33.) Plaintiff testified that he was unable to work because he could not bend or lift objects and could not function properly around groups of people. (*Id.* at 36.) In addition to his physical impairments, Plaintiff testified that he took medication to control his anger, saw a therapist once or twice a week, struggled with concentration, had hallucinations and paranoid thoughts, and suffered from panic attacks three times a week. (*Id.* at 34, 35, 43, 44, 45.)

Following Plaintiff's testimony, the ALJ posed to a vocational expert several hypotheticals involving an individual with Plaintiff's age, education, work experience, and similar physical and mental limitations. The vocational expert testified that such an individual could not perform his past work but that, in certain situations, he could perform jobs found in the national economy. For example, one hypothetical limited the individual to "light work which would require no more than occasional need to bend, twist, crouch, crawl or kneel," would allow the individual to "sit on an as-needed basis for approximately one-third of the day," and required "no more than an occasional need to interact with coworkers and supervisors and no need to interact with the public." (*Id.* at 49.) The vocational expert testified that such an individual could work as a price marker, assembler of small products, and inserter. (*Id.* at 50.)

The ALJ then modified the hypothetical, limiting the individual to work "in relative isolation, left to their own devices with a supervisor maybe checking in . . . one to two times every fours hours." (*Id.*)

The vocational expert responded that the individual could continue to perform the work of a price marker and inserter as well as that of a laundry sorter. (*Id.* at 51.) Next, the ALJ further limited the individual to sedentary work, to which the vocational expert responded that such an individual could work as a production sorter, final assembler of optical goods, and production inspector. (*Id.* at 51–52.) Finally, the ALJ inquired as to an individual who would be late to work, left early or was absent at least three times a month, as well as an individual who would be off task for at least twenty percent of the workday. (*Id.* at 53–54.) The vocational expert responded that there would be no jobs available for either individual. (*Id.*) Additionally, in response to a question from Plaintiff's counsel, the vocational expert agreed that an individual who could not meet "competitive standards" would be unable to work. (*Id.* at 54.)

The ALJ denied Plaintiff's claim in a decision dated July 27, 2011. (*Id.* at 9–19.) Thereafter, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. (*Id.* at 1–3.) In due course, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions presently at issue.

### III. DISABILITY STANDARD AND THE ALJ'S DECISION

Entitlement to SSI requires a showing of both disability and financial need. *See* 42 U.S.C. § 1381a. Here, Plaintiff's financial need is not challenged.

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–49, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> . . . .

> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If

not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ found as follows with respect to these questions. Plaintiff has not engaged in substantial gainful activity since the date of his application, August 20, 2009 (question 1); he has impairments which are severe, namely, history of bilateral inguinal hernia repair, degenerative disc disease of the lumbar spine, osteoarthritis to the left knee, intermittent explosive disorder, mood disorder, and an anti-social personality disorder, but those impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (questions 2 and 3); and, although unable to perform past relevant work, he had the residual functional capacity to perform sedentary work as long he would be provided a sit/stand option and would be limited to no more than occasional interaction with co-workers and supervisors and none with the general public (questions 4 and 5). As a result, the ALJ determined that Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff makes three arguments challenging the ALJ's decision. First, Plaintiff asserts that the ALJ failed to adequately consider the medical opinion of Gina Hughes, an advanced practice registered nurse, regarding his mental residual functional capacity. Second, Plaintiff contends that the ALJ failed to adequately consider his mental impairments in assessing his residual functional capacity. Third, Plaintiff argues that the ALJ failed to adequately consider the combined effect of his mental and physical impairments. In response, the Commissioner asserts that substantial evidence in the record supports the ALJ's findings. The court finds Plaintiff's first argument persuasive and, on that basis alone, will grant Plaintiff's motion to remand.

Specifically, Plaintiff argues that Ms. Hughes was a "treating source" and, as such, that the ALJ was required to give her opinion controlling weight unless he otherwise considered the factors listed in 20 C.F.R. § 416.927(c)(2)-(6) and provided good cause. Plaintiff also argues that the ALJ failed to sufficiently explain the weight given to Ms. Hughes' opinion. The Commissioner, for his part, maintains that nurses are not "treating sources" and, thus, Ms. Hughes' opinion is not entitled to controlling weight. The Commissioner also argues that the ALJ did not disregard her opinion but actually gave it "significant" weight, rejecting only "those portions of Ms. Hughes' opinion that conflicted with the evidence."

■ An administrative law judge must give controlling weight to the opinion of a "treating source" when that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). When an administrative law judge does not accord a treating source's opinion controlling weight, he or she must consider the length, nature, and extent of the treatment relationship, the opinion's supportability and consistency with the record as a whole, the treating source's area of specialization, and any other relevant factors to determine the weight the opinion deserves. *See* 20 C.F.R. § 416.927(c)(2)-(6). The administrative law judge also must provide "good reasons" for the weight ultimately as-

signed to the treating source opinion. *See* 20 C.F.R. § 416.927(c)(2).

■ Here, the court agrees with the Commissioner that a nurse is not a "treating source," namely, an "acceptable medical source" who provided the patient with medical treatment or evaluation and had an ongoing relationship with him or her. *See* 20 C.F.R. § 416.902. Because nurses are not among the "acceptable medical sources" listed in 20 C.F.R. § 416.913(a), they are not treating sources and, thus, their opinions are not entitled to controlling weight. *See* Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in … 416.902, whose medical opinions may be entitled to controlling weight.").

Still, nurses are "other medical sources" whose opinions an administrative law judge has discretion to assign weight. *See* 20 CFR § 416.913(d) ("Other sources include, but are not limited to (1) Medical sources not listed in paragraph (a) of this section (for example nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists) . …"). As the Commissioner's own Social Security Ruling explains, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06–03p at *5. An administrative law judge, however, may not, ignore "other medical sources" or fail to adequately explain the weight given to such evidence. As further explained in SSR 06–03p,

[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p at *3. In fact, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *5.

■ Accordingly, an administrative law judge "generally should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6 (emphasis added). Thus, although "other medical sources" are not entitled to controlling weight and an administrative law judge is not required to provide "good reasons" for the weight assigned to such opinions nor consult the factors listed in 20 C.F.R. § 416.927(c)(2)-(6), he or she still must adequately explain his treatment of the opinion so that a reviewer can determine if the decision is supported by sub-

stantial evidence.[1]

■ While the ALJ in the case at bar stated the weight he gave to Ms. Hughes' opinion—namely, "significant" weight—he did not sufficiently explain himself, and the court has had some difficulty following his reasoning. In essence, the ALJ pointed out, correctly, that, as a nurse, Ms. Hughes was not "acceptable medical source," as discussed above. (A.R. at 16.) The ALJ then stated that he gave Ms. Hughes' opinion "significant, though not controlling, weight" and that her opinion "is actually not inconsistent with" the ALJ's findings. (*Id.*) However, it is not at all clear from the ALJ's decision how Ms. Hughes' opinion is "not inconsistent with" his other findings or how he in fact gave it significant weight.

Indeed, the Commissioner himself was left to speculate that the ALJ must have rejected portions of Ms. Hughes' opinion that conflicted with the ALJ's residual functional capacity analysis, namely, "that the plaintiff was unable to meet competitive standards in several areas of functioning." (Comm. Br. at 13.) For example, Ms Hughes reported, regarding Plaintiff's "mental abilities and aptitudes needed to do unskilled work," that he had "no useful ability to function" in the categories of "ask simple questions or request assistance" and "accept instructions and respond appropriately to criticism from supervisors." (A.R. at 444.) In addition, according to Ms. Hughes, Plaintiff was "unable to meet competitive standards" in the categories of "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," "respond appropriately to changes in a routine work setting," and "deal with nor-

mal stress." (*Id.*) As the Commissioner now argues, the ALJ actually appears to have *rejected* these portions of Ms. Hughes' opinion.

In his decision, the ALJ also stated that the limitations noted by Ms. Hughes "are actually NOT disabling" (A.R. at 15) but, again, failed to explain his reasoning. *See Oberg v. Astrue,* 2012 WL 689339, at *6 (D.Mass. March 1, 2012) ("Because the ALJ has failed 'to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards,' the case must be remanded." (quoting *Weiler v. Shalala,* 922 F.Supp. 689, 694 (D.Mass.1996))). Moreover, the ALJ's statement is inconsistent with the testimony of the vocational expert, who agreed that an individual who was "unable to meet competitive standards" would be unable to work. (A.R. at 54.) In the end, the ALJ's statements regarding Ms. Hughes' opinion are simply inadequate to allow this court to meaningfully review his decision. *Compare Snow v. Astrue,* 2011 WL 4828656, at *3–5 (D.N.H. Oct. 12, 2011) (despite statement that administrative law judge gave "great weight" to medical opinion, he failed to explain his treatment of portions of the opinion that contradicted his conclusion), *with King v. Astrue,* 2010 WL 4457447, at *4 (D.Me. March 29, 2010) ("The administrative law judge fulfilled applicable requirements with respect to the [opinion of a nurse practitioner], expressly considering it, explaining the weight afforded to it, and providing adequate discussion to enable a subsequent reviewer to follow his reasoning. In particular, he noted that he declined to afford it weight because it was (i) contradicted by the plaintiff's own testi-

---

1. SSR 06–03p states that although the factors "explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,'" they "represent basic principles that apply to the consideration of all opinions from medical sources" and "can be applied to opinion evidence from 'other sources.'" *Id.* at *4.

mony, (ii) not supported by contemporaneous medical records, and (iii) rendered by an individual who was not an 'acceptable medical source' and thus not entitled to controlling weight.").

The court also concludes that an inadequate evaluation of Ms. Hughes' opinion may have affected the outcome of the case. As the Commissioner acknowledges, Plaintiff saw Ms. Hughes on a regular basis for mental health issues beginning at least from August of 2010 to December of that year, when she completed the assessment at issue. (A.R. at 391–98, 422–27, 439–40, 442–46). And, as Plaintiff points out, much of the other medical evidence relied upon by the ALJ "relating to [Plaintiff's] mental health impairments are . . . secondhanded observations of physicians treating him for physical impairments." (Pl. Br. at 12; A.R. at 14–15.) In short, had the ALJ properly evaluated Ms. Hughes' opinion, he may have given it more weight than the other medical evidence and may have reached a different conclusion. *See* SSR 06–03p at *5 ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.").

Because it is unclear whether the ALJ properly evaluated Ms. Hughes' opinion and the court cannot follow his reasoning to determine whether the decision is supported by substantial evidence, it is necessary to remand the matter to the Commissioner. *See Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir.2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency."). That being so, the court need not address Plaintiff's remaining arguments.

### V. Conclusion

For the reasons stated, Plaintiff's motion is ALLOWED, to the extent it seeks a remand for a new hearing, and the Commissioner's motion to affirm is DENIED.

SO ORDERED.

